BRADLEY, Judge.
This is an appeal from a judgment setting apart a homestead exemption and investing fee simple title thereto in the widow of the deceased.
On June 8, 1979 Belle Huggins filed suit against defendants, nieces and nephews of her deceased husband, to have set aside to her in fee simple eighty acres of land which was the homestead of her deceased husband. T. N. Huggins died intestate and without minor heirs in 1946.
Defendants answered by denying that the land in question was all the property owned by deceased and that the property was valued at less than $2,000. They also denied that Mrs. Huggins was entitled to set aside the land as a homestead in fee simple.
After a hearing the trial court found that at the time of his death, T. N. Huggins was the owner in fee simple of the land in question, that Belle Huggins was the widow of T. N. Huggins and had lived on the land in question continuously since her husband’s death, that T. N. Huggins left no children or lineal descendants, and that at the time of his death the land in question constituted all the land owned by deceased and was less than one hundred sixty acres in size and less than $2,000 in value.
The record discloses that T. N. Huggins died on December 9, 1946 leaving a widow but no children or lineal descendants. Belle Huggins, his widow, testified that at the time of his death, T. N. Huggins owned eighty acres of land, which was their home. The land had been previously owned by T. N. Huggins’s mother. Huggins and his sister inherited the property from their mother. Huggins bought his sister’s one-half interest in 1942 for $1,100.
In 1944 a storm blew down part of the timber on the property. At that time, about one-half of the land was wooded. The downed timber was salvaged and sold.
In 1946 Huggins died intestate and his estate was not administered. Belle Huggins and T. N. Huggins were living on the property in question at his death and she has continued to live there since his death.
Mrs. Huggins testified that the property was worth less at the time of her husband’s death than it was when he purchased it in 1942. The reason given for the difference in value was the loss of the timber.
Lawrence Manning testified that he owned an eighty acre tract near Mrs. Huggins’s property and that his land was more valuable than the Huggins property because his property was situated on the main thoroughfare and was more suited to cultivation. He said he paid $2,000 for his property in 1943.
R. A. Wible, a witness for defendants, stated that the Huggins property was worth between $3,040 and $3,200 in 1946.
Defendants’ first issue questions the authority of the trial court to set aside to Mrs. Huggins her husband’s homestead in fee simple as a result of his death in 1946. For this contention defendants rely primarily on the repeal in 1951 of Title 7, § 663, Code of Alabama 1940. They say that Title 7, § 663, Code of Alabama 1940, which was in effect at the time of T. N. Huggins’s death and would have authorized the setting aside to his widow of his homestead, was repealed in 1951, and thereby nullified any rights to the homestead that Mrs. Huggins might have had. We disagree.
Title 7, § 663, Code of Alabama 1940 provided, in part, as follows:
When the homestead set apart to the widow and minor child or children, or either, constitutes all the real estate owned in this state by the decedent at the time of his death, the title of such homestead vests absolutely in them, whether there be administration on the estate of the decedent or not; but the title to the homestead shall not vest absolutely in them as against the other heirs of decedent until it is so set apart and until it is judicially determined that it is all the real estate owned by the decedent, and that it is not of greater value than two thousand dollars ....
It is true that § 663 was in effect at the time of T. N. Huggins’s death in 1946, that said section was repealed in 1951, and *1327 that Mrs. Huggins did not seek to have the homestead set aside to her until 1979. But, the homestead rights of a widow are determined by the law in force at the time of the decedent’s death. Tipton v. Tipton, 268 Ala. 497, 108 So.2d 348 (1959); Craig v. Root, 247 Ala. 479, 25 So.2d 147 (1946); Davis v. Davis, 63 Ala. 293 (1879). In other words, the rights, of a widow under the homestead statutes are fixed by the death of her husband. Nix v. McCoy, 280 Ala. 516, 195 So.2d 893 (1967).
In the case at bar T. N. Huggins died in 1946 and § 663 was in effect at that time. Thus Mrs. Huggins’s right to have her deceased husband’s homestead set aside to her was fixed in 1946. Consequently, the subsequent repeal of § 663 had no effect on Mrs. Huggins’s rights to her husband’s homestead. The repeal of a statute does not destroy vested rights. Blake v. State, 178 Ala. 407, 59 So. 623 (1912). And, Mrs. Huggins’s rights to the homestead were vested by the death of her husband. It should be noted, however, that title to the property did not vest absolutely in Mrs. Huggins until the provisions of § 663 were satisfied. But this does not mean that Mrs. Huggins’s right to have such homestead set aside to her was not established by the death of her husband in 1946.
Defendants argue that Title 7, § 663 violates the equal protection provisions of the United States and Alabama Constitutions. This issue was raised for the first time, however, by defendants in their motion for new trial. Constitutional issues raised for the first time in a motion for new trial come too late for consideration on appeal. Burton v. Burton, Ala.Civ.App., 379 So.2d 617 (1980).
Defendants say that Mrs. Huggins’s claim to set aside the homestead in fee simple is barred by laches.
There is no statute of limitation which prescribes the time within which a widow must present her petition to have the homestead set aside where there has been no administration of decedent’s estate. Craig v. Root, supra. There has been no administration of T. N. Huggins’s estate. Furthermore, when the property was occupied as a homestead by the decedent at the time of his death, was all the property he owned in Alabama, and did not exceed the value or area allowed by law, the widow takes a life estate in the property without the necessity of any action on her part. The law intervenes and establishes such an estate. Craig v. Root, supra.
It is also a well-settled rule that laches cannot be imputed to one in the peaceable possession of land. Craig v. Root, supra. In the instant case Mrs. Huggins had a life estate in her husband’s property and had lived on it continuously since his death.
When the affirmative defense of laches is properly presented, the facts and circumstances of each case govern the court in its determination of the inquiry. Craig v. Root, supra. Moreover, it has often been said that mere delay resulting in no disadvantage to another will not bar a petitioner’s right or remedy. Craig v. Root, supra.
Clearly, in the case at bar, no disadvantage has resulted to defendants by Mrs. Huggins’s delay in seeking to have her husband’s homestead set aside to her in fee simple.
Defendants’ final issue is whether the proof is sufficient to show that the property in question was worth less than $2,000 in 1946. We find that it is sufficient.
The trial court found that the value of the property did not exceed $2,000 in value, which was the maximum allowable under Title 7, § 663. The trial court’s finding must be upheld if there • is any credible evidence to support it. Raidt v. Crane, Ala., 342 So.2d 358 (1977).
The record shows that Mrs. Huggins testified that the property in question was worth less than $2,000 and that an adjoining property owner testified that the property in question was worth less than his property, which he valued at slightly more than $2,000.
*1328 We consider both witnesses competent to testify as to the value of the property by virtue of § 12-21-114, Code 1975, which is as follows:
Direct testimony as to the market value is in the nature of opinion evidence; one need not be an expert or dealer in the article, but may testify as to value if he has had an opportunity for forming a correct opinion.
Whether a witness has had an opportunity to correctly form an opinion as to value is a question for the court to decide and the court will not be reversed absent an abuse of discretion. Blount County v. Campbell, 268 Ala. 548, 109 So.2d 678 (1959). We find no abuse of discretion here. Both witnesses testified they were familiar with the property in question.
The judgment of the trial court is affirmed.
AFFIRMED.
WRIGHT, P. J., and HOLMES, J., concur.